UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

JESSIE JAMES WILEY                          CIVIL ACTION NO. 07-0795

VS.                                         SECTION P

HARVEY GRIMMER, WARDEN                       JUDGE JAMES

                                            MAGISTRATE JUDGE HAYES

REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on or about May 7, 2007, by *pro se* petitioner Jessie James Wiley.  Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections.  He is incarcerated at the West Carroll Parish Detention Center, Epps, Louisiana, where he is serving the 20-year sentence imposed following his 2003 conviction for possession with intent to distribute cocaine in the Sixth Judicial District Court, Tensas Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

*Statement of the Case*

On October 29, 2003, petitioner was found guilty as charged of possession with intent to distribute cocaine in the Sixth Judicial District Court. He filed a Motion for a New Trial alleging that witnesses were paid for their testimony; that there were irregularities in the jury process; and that the trial judge should have recused himself. [doc. 1-3, p. 34; doc. 7-4, pp. 2-8]  The Motion

was denied.  On December 22, 2003, petitioner was sentenced to serve 20 years at hard labor.

Counsel filed an oral motion for appeal.  Petitioner's retained trial counsel withdrew and the

court appointed appellate counsel for the purposes of the appeal.  [doc. 1-3, p. 13; p. 30; see also

*State of Louisiana v. Jesse James Wiley a/k/a Jessie James Wiley*, 40,289 (La. App. 2 Cir.

10/26/2005), 914 So.2d 1117, 1121]

Counsel argued two Assignments of Error – sufficiency of evidence and excessiveness of

sentence.  Petitioner filed a *pro se* motion seeking permission to file a supplemental appeal brief.

On September 14, 2005, his motion was granted and petitioner was directed to submit his

supplemental *pro se* brief within 30 days of the September 14 order. [doc. 6, p. 13]

On October 26, 2005, his conviction and sentence were affirmed and Notice of Judgment

was mailed to petitioner and his appellate counsel. [See *State of Louisiana v. Jesse James Wiley

a/k/a Jessie James Wiley*, 40,289 (La. App. 2 Cir. 10/26/2005), 914 So.2d 1117; see also doc. 1-

3, p. 29 (Notice of Judgment) and Slip Opinion, at pp. 36-45] On some unspecified date after

October 26, 2005, petitioner filed another motion seeking permission to file a supplemental brief.

On December 16, 2005, the Second Circuit denied the motion on the grounds that the judgment

of October 26, 2005, was final "... [b]ecause the defendant did not file an application for

rehearing within the 14-day time delay and did not file a writ application in the supreme court

within the 30-day time delay..." [doc. 1-3, p. 27; doc. 6] Petitioner did not seek further direct

review in the Louisiana Supreme Court. [doc. 1-1, paragraph 6(c)]

Instead, on December 15, 2005, he filed a *pro se* Application for Post-Conviction Relief

in the Sixth Judicial District Court, arguing the following claims for relief:  (1) the state failed to

disclose evidence favorable to the defendant; (2) the grand jury or the petit jury was

unconstitutionally selected and impaneled; (3) the District Attorney tampered with the jury

during deliberations; (4) ineffective assistance of counsel; (5) the conviction was obtained by perjury and coercement [sic] by Sheriff Ricky Jones and foreman Richard Townsend, and "The trial court denied such claims which were establish in the record..." [doc. 1-1, paragraph 7(b); doc. 1-3, p. 28; doc. 6, pp. 41-49] On January 26, 2006, the application was denied without an evidentiary hearing. [doc. 1-1, paragraph 7(b)(ix)] In denying relief, the district court made the following observations:

Claim One
The defendant claims that the state failed to disclose evidence favorable to defendant in that the bill of information did not list the witnesses who were to testify at trial and the state did not otherwise disclose witnesses who would testify at trial. The bill of information filed herein as a printed form with "Witnesses" printed on the reverse side. There is no legal requirement that witnesses be listed on the bill of information. Further, there is nothing in the record to suggest that defendant was unaware of the identity of any witnesses (other than possibly the identity of a confidential informant) nor did the defendant seek the names or addresses of witnesses in any pretrial motion nor does he allege prejudice by the failure to disclose the names of any specific witnesses...

The defendant also argues that he was prejudiced by the state's failure to subpoena the confidential informant to give relevant testimony thereby depriving the defendant of the opportunity to cross examine the confidential informant. The prosecution has the authority and discretion to present the witnesses of its choice at trial. There is no statutory or jurisprudential requirement that a confidential informant be called to testify.

Claim Two
In Claim Two the defendant alleges that the petit jury was unconstitutionally selected in that a jailer employed by the Tensas Parish Sheriff and a patrolman employed by the Town of St. Joseph were selected as jurors. In essence, the defendant argues that his challenges for cause of these two jurors should have been granted.  While the undersigned believes that the record supports the denial of the challenge for cause of the two jurors the record demonstrates that the defendant did not utilize all of his peremptory challenges. Since the defendant failed to exercise all of his peremptory challenges prejudice from an erroneous denial of a challenge for cause is not presumed... The defendant has not alleged any facts demonstrating prejudice in the selection of the two jurors and therefore this claim is without merit.

Claim Three
In Claim Three the defendant claims that the jury was tampered with in that the
Assistant District Attorney talked to the jury foreman during jury deliberations.
The record (including that portion attached to defendant's application) clearly
demonstrates that the Assistant District Attorney only spoke to a member of the
jury after the trial was complete and the jury was discharged...

Claim Four
In Claim Four the petitioner alleges that his retained trial counsel ... was
ineffective ... because (1) a preliminary examination was not held, (2) counsel
failed to move for return of a responsive verdict during closing argument, (3)
counsel failed to use a peremptory challenge to exclude prospective juror, Richard
Townsend, a jailer employed by the Tensas Parish Sheriff.

The allegations in Claim Four do not satisfy either prong of the two-prong test
developed by the United States Supreme Court in *Strickland v. Washington*, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, there is no showing that counsel's performance was deficient. Defense
counsel moved for a preliminary examination on at least one occasion but the
preliminary examination was dismissed without prejudice. Dismissal without
prejudice of a Preliminary Examination in the Sixth Judicial District Court is
generally a bargained for result which occurs when the District Attorney's office
provides 'open file' discovery. Arguably, this tactic or agreement works to the
benefit of the defendant.

Secondly, the defendant contends that counsel's performance was deficient
because he failed to 'move' for a responsive verdict during closing argument. The
record demonstrates that counsel, while arguing that the defendant was innocent,
pointed to a plea bargain agreement reached by a co-defendant under the terms of
which the co-defendant was allowed to plead guilty to a lesser, included charge of
Possession of Cocaine and received a probated sentence. Thus, defense counsel,
without admitting defendant's guilt to a responsive verdict gave the jury the
opportunity to convict the defendant of the same crime that the co-defendant pled
to. The jury instruction and verdict form further explained and clarified the lesser,
included verdict. Defense counsel's strategy in this regard to invite the jury to
treat the defendant equally with a co-defendant is a legitimate trial strategy and
should not be second-guessed.

Lastly, defendant's argument that counsel's performance was deficient in that he
failed to peremptorily challenge juror Richard Townsend is without merit. Juror
Townsend was questioned during the Motion for New Trial. His testimony
demonstrated that he was not influenced as a juror because he works as a jailer.

Importantly, the defendant has not shown that defense counsel's performance prejudiced his defense; therefore, the second prong of *Strickland* is not met. No facts are alleged that would constitute actual prejudice even if they could be proven.

Claim Five
In Claim Five the defendant alleges that the conviction was improperly obtained in that (1) Sheriff Rickey Jones coerced Richard Townsend to solicit votes from other jurors; (2) Sheriff Jones committed perjury in that during the hearing on Motion for New Trial he could not recall testifying at trial, and (3) Richard Townsend committed perjury when he denied speaking to the Assistant District Attorney about the verdict. Each of these allegations is refuted by the record and thus Claim Five is without merit. [doc. 7-3, pp. 2-4]

Sometime prior to April 26, 2006, petitioner filed a Motion to Amend or Modify Sentence citing La. C.Cr.P. arts. 822 and 881. On April 26, 2006, the court denied relief because the cited articles do not authorize amendment of sentence after commencement of the execution of the sentence. In the alternative, the court determined that if the pleading should be considered an application for post-conviction relief, it was both untimely and repetitive. [doc. 7-3, p. 1]

On June 6, 2006, petitioner filed a writ application in the Second Circuit Court of Appeals seeking review of the trial court's denial of his December 2005 application for post-conviction relief.  [doc. 1-3, pp. 52-73] The writ application was assigned Docket Number 41517-KH and was denied on June 23, 2006.  In denying writs, the Court noted, "On the application presented, no error appears in the trial court's denial of post-conviction relief, and the writ is denied." *State of Louisiana v. Jessie James Wiley*, No. 41517-KH (La. App. 2 Cir. 6/23/2006) [doc. 1-3, p. 50; doc. 6, pp. 11-12; 19-20]

On July 17, 2006, petitioner filed a timely writ application in the Louisiana Supreme

Court. [doc. 1-3, pp. 1-26][1] On April 27, 2007, the Supreme Court denied writs without comment. *State of Louisiana ex rel. Jessie J. Wiley v. State of Louisiana*, 2006-1941 (La. 4/27/2007), 955 So.2d 676.

The instant  petition was received and filed on May 7, 2007.  Petitioner argued four claims for relief in his petition: (1) "The State failed to disclose favorable evidence to the defendant; (2)  The conviction was obtained by action of petit jury which was unconstitutionally selected and impaneled; (3) The State of Louisiana through the District Attorney's Office tampered with the jury while in deliberations; (4) Ineffective assistance of counsel (a) for failing to challenge two deputy sheriffs who served on the jury Petitioner, (b) for failing to conduct a preliminary hearing, (c) for failing to move for a responsive verdict, and (d) for failing to file a motion for post-verdict judgment of acquittal. [doc. 1-1, paragraph 5]  Petitioner did not file a brief or memorandum in support of his *habeas* petition.  This fact was called to his attention in the Memorandum Order of June 25, 2007 [See doc. 5, p. 7, "Petitioner should provide a

---

[1] In Claim One petitioner argued that "... the state failed to disclose favorable evidence to the defendant..." [doc. 1-3, p. 13] He alleged that the state failed to disclose the names of two witnesses in advance of trial and also failed to disclose the identity of a confidential informant.  Petitioner alleged that the State "... failed to reveal the names of George Arnold, James Arnold, nor did the State provide the Defendant with any statements made by the witness of who testified at trial and their relevant issues pertaining to the allege crime." [*id*., pp. 13-14] However, petitioner did not provide any argument or evidence to establish that the State failed to provide exculpatory evidence. [*id*., pp. 13-15] In Claim Two petitioner argued that the court erred when it denied challenges for cause with respect to jurors who were employed by the Sheriff or police department.  However, he did not argue that this error violated the Constitution or laws of the United States. [doc. 1-3, pp. 15-19] In Claim Three petitioner argued that the District Attorney "tampered" with the jury during deliberations.  Again, he cited no violation of federal law other than as follows: "There is Constitutional question in error of the trial court, that the jury were or was not tampered with by both Sheriff Jones and the District Attorney James Paxton and for these reasons presented by the Defendant, the conviction and sentence should be set aside and remanded back to the Trial Court in the granting of an Evidentiary Hearing in said matter where all jurors that made these allegations pertaining to the irregularities in the deliberations process, testify on behalf which does pose Constitutional Rights of being denies due process which has affected the defendants rights of Freedom and Liberty. Which is protected under the Constitution of Louisiana of 1974 and the United States Constitution." [doc. 1-3, p. 20] In Claim Four petitioner argued ineffective assistance of counsel based on counsel's failure to "perform a Preliminary Examination which was dismissed without prejudice..."; failed to move for a responsive verdict during closing arguments; and failed to peremptorily challenge juror Townsend who was employed by the Tensas Parish Sheriff's Department. [doc. 1-3, pp. 20-21] In Claim Five petitioner argued that the Sheriff, through his deputy, Townsend, coerced the jury into convicting petitioner. [*id*, p. 24]

memorandum of law in support of his petition for writ of *habeas corpus*.  This memorandum of law should specify how each error complained of herein violated the Constitution or law of the United States."].  On July 11, 2007, petitioner responded to this directive as follows, "I am unable to do a memorandum because I don't have any experience in this matter and no one at this institution has the knowledge to do it for me.  I filed for appointment of counsel and can not go on to adequately do what is necessary without the assistance of counsel.  Please notify me as to what I must do as this is very important to me." [doc. 6, p. 1]  Nevertheless, on July 30, 2007, petitioner filed additional exhibits including a more detailed explanation of his *habeas* claims. [doc. 7-2, pp. 4-9]

On May 7, 2007, petitioner filed a Motion for Appointment of Counsel. [doc. 3] On June 25, 2007, the undersigned denied petitioner's motion. [doc. 5] On July 11, 2007, the petitioner again moved for appointment of counsel. [doc. 6]

### Law and Analysis

### 1. Second Motion for Appointment of Counsel

Petitioner has again requested appointment of counsel. As noted in the order denying petitioner's first request for appointment of counsel, the court may appoint counsel to represent an inmate pursuing federal *habeas corpus* relief. 28 U.S.C. § 2254 ; Rules 6(a) and 8(c), Rules Governing Section 2254 Cases; and 18 U.S.C. § 3006A.  Nevertheless, there is no Sixth Amendment right to appointed counsel for prisoners mounting collateral attacks on their convictions or sentences. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). See also *Wright v. West*, 505 U.S. 277, 293, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (no Constitutional right to counsel in *habeas corpus* proceedings); and *Johnson v. Hargett*, 978 F.2d 855, 859 (5th Cir.1992).

Of course, the court must appoint counsel if an evidentiary hearing is convened. However, until such time, the decision on whether or not to appoint counsel rests in the sound discretion of the trial court. *United States v. Vasquez*, 7 F.3d 81, 84 (5th Cir.1993). In resolving this issue, the court should consider both the legal and factual complexity of the case along with petitioner's ability to prepare and present his claim. *Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir.1994). See *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir.1991)(holding that in the context of a civil rights case, the court should base the decision to appoint counsel on many factors, including the type and complexity of the case; the plaintiff's ability to adequately investigate and present his case; the presence of evidence which consists of conflicting testimony so as to require skill in presentation of the evidence and cross-examination; and the likelihood that appointment will benefit the plaintiff, the court, and the defendants).

In addition, the court should consider whether or not the petitioner is able to retain counsel to represent him. Among other things, petitioner submitted a copy of a Motion for Leave to Proceed *in forma pauperis* which was apparently submitted to the Second Circuit Court of Appeals on July 26, 2007.[2]   The documents submitted establish that petitioner was the recipient of a check in the amount of $50,000.00 on February 7, 2007. [doc. 7-3, pp. 5-12]  Petitioner is not indigent and is apparently capable of retaining counsel to represent him in this proceeding.

In any event, a thorough review of the pleadings and exhibits establishes that petitioner is not entitled to relief and therefore, there is no need to appoint counsel.

---

[2] Petitioner does not explain why he seeks *in forma pauperis* status with the Second Circuit Court of Appeals. However, the record submitted by petitioner reflects that on July 2, 2007 he corresponded with the Second Circuit and requested a copy the pleadings and exhibits filed under Docket Number KH 06-41517. [see doc. 6, p. 3] He also submitted a copy of a letter from the Clerk of the Second Circuit Court of Appeals which advised, "Please be advised that our office does not provide free copies of filings ... The writ application filed with this court is 230 pages in length. Our copy fee is $1.50 per page. A copy of this application will cost $345.00." The undersigned has not directed petitioner to provide a copy of the writ application he filed in the Second Circuit Court of Appeals and therefore, it is unclear why petitioner is requesting that document.

## 2. Exhaustion and "Technical" Procedural Default

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claims. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5 Cir.2001); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998) citing *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir.1985); *Mercadel*, 179 F.3d at 275 citing *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983);

*Deter v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk*, 144 F.3d at 360 citing *Richardson*, 762 F.2d at 431-32. In Louisiana, the highest court is the Louisiana Supreme Court. Put another way, to have exhausted his state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state's Supreme Court. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

Petitioner argued claims identical to the claims raised in the instant petition in his application for post-conviction relief in the Sixth Judicial District Court and in his subsequent writ applications in the Second Circuit Court of Appeals and the Louisiana Supreme Court. However, with the exception of his ineffective assistance of counsel claim, petitioner presented no Federal Constitutional claims to the Louisiana courts. As shown above, in Claim One petitioner argued that "... the state failed to disclose favorable evidence to the defendant..." [doc. 1-3, p. 13] He alleged that the state failed to disclose the names of two witnesses in advance of trial and also failed to disclose the identity of a confidential informant. Petitioner alleged that the State "... failed to reveal the names of George Arnold, James Arnold, nor did the State provide the Defendant with any statements made by the witness of who testified at trial and their relevant issues pertaining to the allege crime." [*id*., pp. 13-14] However, petitioner did not provide any argument or evidence to establish that the State failed to provide <u>exculpatory</u> evidence. [*id*., pp.

13-15] Nor did he argue that his claim was founded on a violation of rights secured to him by the United States Constitution.  In short, petitioner argued that the State, at worst, violated the provisions of the discovery statutes set forth in the Louisiana Code of Criminal Procedure.

Likewise, in Claim Two petitioner argued that the court erred when it denied challenges for cause with respect to jurors who were employed by the Sheriff of Tensas Parish or the St. Joseph Police Department.  Again, however, he did not argue that this error violated the Constitution or laws of the United States. [doc. 1-3, pp. 15-19]

In Claim Three petitioner argued that the District Attorney "tampered" with the jury during deliberations. Again, he cited no violation of federal law other than as follows: "There is Constitutional question in error of the trial court, that the jury were or was not tampered with by both Sheriff Jones and the District Attorney James Paxton and for these reasons presented by the Defendant, the conviction and sentence should be set aside and remanded back to the Trial Court in the granting of an Evidentiary Hearing in said matter where all jurors that made these allegations pertaining to the irregularities in the deliberations process, testify on behalf which does pose Constitutional Rights of being denies due process which has affected the defendants rights of Freedom and Liberty. Which is protected under the Constitution of Louisiana of 1974 and the United States Constitution." [doc. 1-3, p. 20]  In Claim Five petitioner argued that the Sheriff, through his deputy, Townsend, coerced the jury into convicting petitioner. [*id*, p. 24] Again, however, he argued no violation of the United States Constitution.

As noted above, in order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal *habeas corpus* claims to the state courts. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004).  Here, other than petitioner's vague and fleeting reference to the "United States

Constitution" in Claim Three, petitioner argued no violations of federal law to the Louisiana

courts.  Instead, he argued violations of Louisiana law.  "A fleeting reference to the federal

constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not

sufficiently alert and afford a state court the opportunity to address an alleged violation of federal

rights.  Moreover, to hold that vague references to such expansive concepts as due process and

fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion

requirement." *Wilder*, 274 F.3d at 260.

    In short, petitioner did not fairly present the substance of any federal claims to the

Louisiana Supreme Court with regard to Claims One, Two, Three, and Five. Those claims were

therefore not properly exhausted.[3]

    Of course, should petitioner attempt to raise his claims anew in the Louisiana courts, his

efforts would be doomed to failure since a new application for post-conviction relief would be

barred by the provisions of La. C.Cr.P. art. 930.4 which prohibit repetitive applications.  Thus,

while petitioner's claims were not exhausted, they can be said to be "technically exhausted" since

no state remedies remain available.

    A petitioner has "technically exhausted" his federal claim if he fails to properly and

timely present it to the Louisiana courts and is thereafter barred from seeking relief in the

Louisiana courts.  *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) citing *Coleman v.

Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*,

61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at

254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998).  In such a case, however, there

---

    [3] Of course, petitioner has not presented this court with any argument alleging violations of federal law with
respect to these claims. While petitioner could amend his pleading to provide such argument, such an amendment
would be futile since he failed to present any federal claims to the Louisiana courts.

is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *id.*

In other words, since petitioner failed to properly present his federal *habeas corpus* claims to the Louisiana courts, those claims remain unexhausted, and for purposes of federal *habeas corpus* review, since petitioner cannot now meet the exhaustion requirement [see LSA C.Cr.P. art. 930.4] those claims are "technically" procedurally defaulted. See *Wilder; O'Sullivan; Magouirk; Richardson; Mercadel; Dupuy; Coleman; Sones; Bledsue; and Fuller, supra.*

Since Claims One, Two, Three and Five are "technically" procedurally defaulted, the court may  refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas corpus* review. See *Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, *supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) quoting *McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

### *Cause and prejudice*

In *Murray v. Carrier*, the Supreme Court explained that "cause" in this context  refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.  Without

attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

Clearly, the cause of the default herein identified was petitioner's  failure to properly advance federal claims in his state post-conviction litigation.  This failure was clearly not "... an impediment external to the defense..." Thus, petitioner has not shown "cause" for his default. If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).  Nevertheless, in this case, even if it is assumed that petitioner has shown cause for his default, he cannot show prejudice since he is unable to show that even a properly filed writ application would have resulted in a judgment in his favor.

### *Miscarriage of Justice*

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct.

1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the crime, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.[4]

### 3. Ineffective Assistance of Counsel

Petitioner fairly presented the substance of his ineffective assistance of counsel claim to the Louisiana courts. Therefore, it appears that state court remedies, with respect to this claim, have been fully exhausted.  Nevertheless, as is shown hereinafter, petitioner's ineffective assistance of counsel claim is ripe for summary dismissal.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Petitioner argues three instances to establish his claim of ineffective assistance of counsel. He claims that counsel was ineffective because he failed to: (1) conduct a preliminary examination; (2)"move" for a responsive verdict during closing arguments; and, (3) peremptorily challenge juror Richard Townsend, a Tensas Parish Sheriff's Deputy.  In order to succeed on this

---

[4] As is shown hereinafter, the evidence of petitioner's guilt is overwhelming.

claim, petitioner must demonstrate that counsel's performance was deficient and, that the

deficient performance resulted in prejudice to the petitioner.  *Strickland v. Washington*, 466 U.S.

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The state district court addressed the merits of each

of petitioner's claims:

> In Claim Four the petitioner alleges that his retained trial counsel ... was
> ineffective ... because (1) a preliminary examination was not held, (2) counsel
> failed to move for return of a responsive verdict during closing argument, [and]
> (3) counsel failed to use a peremptory challenge to exclude prospective juror,
> Richard Townsend, a jailer employed by the Tensas Parish Sheriff.
>
> The allegations in Claim Four do not satisfy either prong of the two-prong test
> developed by the United States Supreme Court in *Strickland v. Washington*, 466
> U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> First, there is no showing that counsel's performance was deficient. Defense
> counsel moved for a preliminary examination on at least one occasion but the
> preliminary examination was dismissed without prejudice. Dismissal without
> prejudice of a Preliminary Examination in the Sixth Judicial District Court is
> generally a bargained for result which occurs when the District Attorney's office
> provides 'open file' discovery. Arguably, this tactic or agreement works to the
> benefit of the defendant.
>
> Secondly, the defendant contends that counsel's performance was deficient
> because he failed to 'move' for a responsive verdict during closing argument. The
> record demonstrates that counsel, while arguing that the defendant was innocent,
> pointed to a plea bargain agreement reached by a co-defendant under the terms of
> which the co-defendant was allowed to plead guilty to a lesser, included charge of
> Possession of Cocaine and received a probated sentence. Thus, defense counsel,
> without admitting defendant's guilt to a responsive verdict gave the jury the
> opportunity to convict the defendant of the same crime that the co-defendant pled
> to. The jury instruction and verdict form further explained and clarified the lesser,
> included verdict. Defense counsel's strategy in this regard to invite the jury to
> treat the defendant equally with a co-defendant is a legitimate trial strategy and
> should not be second-guessed.
>
> Lastly, defendant's argument that counsel's performance was deficient in that he
> failed to peremptorily challenge juror Richard Townsend is without merit. Juror
> Townsend was questioned during the Motion for New Trial. His testimony
> demonstrated that he was not influenced as a juror because he works as a jailer.
> Importantly, the defendant has not shown that defense counsel's performance

prejudiced his defense; therefore, the second prong of *Strickland* is not met. No facts are alleged that would constitute actual prejudice even if they could be proven.  [doc. 7-3, pp. 2-4]

The ineffective assistance of counsel claims were adjudicated on the merits.  Therefore, these claims must be reviewed under the standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254.  A federal court may grant the application for a writ of *habeas corpus* only if the petitioner's conviction was the product of a state court adjudication that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). "A decision is contrary to clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" *Gardner v. Johnson*, 247 F.3d 551, 557 (5th Cir.2001) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).  A presumption of correctness attaches to factual determinations made by a state court. 28 U.S.C. § 2254(e)(1).  A *habeas* petitioner must rebut this presumption by clear and convincing evidence. *id.*; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir.2002).

Petitioner has not shown (nor can he show) that the district court's post-conviction decision was contrary to, or involved an unreasonable application of, clearly established Federal law; nor has he rebutted the presumption of correctness with regard to the court's findings of fact.  The court's legal conclusion, that petitioner failed to demonstrate deficient performance, has not been shown to be an unreasonable application of the law.  With regard to this ineffective assistance of counsel claim, petitioner has not, nor can he show, that the findings of fact and

conclusions of law of the Third Circuit were"unreasonable" and therefore he cannot prevail.[5]

Finally, there was overwhelming evidence of petitioner's guilt introduced at trial. Petitioner has not, nor can he, show that he suffered any prejudice as a result of the specific acts of deficient performance alleged.  As shown above, in order to prevail on his claims of ineffective assistance, petitioner must establish that the alleged deficiency caused prejudice;  and, in order to show prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694, 104 S.Ct. 2052 (emphasis supplied).  Petitioner has not demonstrated prejudice as defined by *Strickland* and therefore, even if he could show deficient performance, his claims would be subject to dismissal. In other words, the overwhelming evidence of his guilt accounted for his conviction, not the alleged errors of trial counsel.[6]

---

[5] It should be noted that in this context, a state court's decision may even be incorrect without being "unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410-411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

[6] On direct appeal, the Second Circuit recited the following statement of the case: "On May 7, 2002, Deputy John Mathews of the Tensas Parish Sheriff's Office received a cell phone call from a confidential informant advising that Wiley had just sold crack to a man named James Arnold at James's house on Fourth Street in St. Joseph. The informant also described the car, a brown and white Lincoln Town Car, that Wiley had driven and parked outside the house. Dep. Mathews testified that this informant had been responsible for at least 10 felony arrests. Dep. Mathews cruised by the house and saw the Lincoln parked in front; he radioed the tag number to Deputy Rob Rushing, who confirmed the car was registered to Wiley's mother. Moments later Dep. Mathews saw two black men get into the car and drive off. Dep. Mathews radioed Dep. Rushing to assist him in stopping the Lincoln.

Deputy Rushing met the Lincoln at the corner of Fourth and Hancock Streets. He recognized Wiley, who was driving, and Melvin Williams, the passenger. The Lincoln sped off without stopping and Dep. Rushing started to pursue it toward Waterproof. However, the informant called again, saying that Wiley was headed toward Hwy. 65. Maintaining radio contact, both deputies coordinated to stop the fleeing Lincoln.

Deputy Rushing pulled in front of the Lincoln at the corner of Ice House Road and Hwy. 65; both vehicles stopped. Dep. Rushing was about to order the occupants out of the car when he saw a small object tossed out the passenger window; the Lincoln then immediately sped north on Hwy. 65. Dep. Rushing rode over and picked up the object, a pill bottle apparently containing crack cocaine. He then resumed the chase.

After a fast U-turn, Dep. Rushing again stopped the Lincoln on the southbound shoulder of Hwy. 65 and ordered the driver out. Wiley opened the door and stepped out, carrying an infant in his arms. Dep. Rushing told him to place the baby in the car, but Wiley cursed and refused, shouting only that he was going to his mother's house. Wiley then got

Since it plainly appears that petitioner is not entitled to relief on his ineffective assistance of counsel claim, dismissal under Rule 4 is appropriate.

### *Conclusion*

Petitioner's Second Motion for Appointment of Counsel [doc. 6] is **DENIED.**

Further,

**IT IS RECOMMENDED THAT** Claims One (failure to disclose favorable evidence), Two (denial of challenge for cause), Three (jury tampering), and Five (jury coercion) be **DENIED** and **DISMISSED WITH PREJUDICE** because those claims, while technically

---

back in the car and sped off again. Dep. Rushing radioed Dep. Mathews that there was an unrestrained baby in the Lincoln, and they called off the high-speed chase. A short while later, Dep. Mathews located the Lincoln, abandoned in tall grass off an oilfield road.

Deputies did not apprehend Wiley that day, but based on the informant's confirmed tips and the fact that Dep. Rushing recognized Wiley as the driver, they swore out an affidavit charging him with possession of crack cocaine with the intent to distribute.

At trial, James Arnold confirmed that on May 7, 2002, Wiley came to his house in St. Joseph and sold him 15 rocks of crack for $200 in two crisp new $100 bills. He testified that he and Wiley had just completed the deal in a back bedroom, where Melvin Williams was also present, when his brother George Arnold burst in to say the police were riding up and down the street. According to James, Wiley put the pill bottle back in his pocket and left with Melvin and the baby; they got in the Lincoln and drove off. James was not charged in connection with this incident.

Melvin Williams testified that Wiley drove him to James's house that afternoon; several people were smoking crack there. He confirmed that he, Wiley and James went into the back bedroom, where Wiley sold James some crack for $200 in $100 bills.[FN. Melvin initially testified the deal was for 12 rocks of crack but he later admitted it may have been 15.] After the sale, Wiley still had several rocks left in a pill bottle in his front pocket. As soon as they heard the police 'were riding,' Melvin and Wiley--carrying the baby--left in the Lincoln. At some point, Wiley handed him the pill bottle; when Dep. Rushing stopped them the first time, Wiley told him (Melvin) to toss it out the window, and he did so. Melvin further described the chase down country roads, including the second stop, when Wiley got out of the car with the baby. Finally they parked the car near an old oil pump and fled on foot. Melvin admitted that for his part in this offense, he pled guilty to possession of crack and promised to testify truthfully against Wiley. In exchange, he received a suspended sentence of three years with three years' probation, which was later revoked.

Susan Rutledge, a forensic chemist from the North Louisiana Crime Lab, testified that the pill bottle contained 19 to 21 pieces and crumbs of crack cocaine weighing 3.52 grams. Sheriff Ricky Jones testified that somebody with that much cocaine must be dealing it, not merely using it. Ms. Rutledge admitted there was no request to analyze the bottle for fingerprints. Dep. Rushing testified that because of the exigency of the chase, he did not put on gloves before picking up the bottle from the roadside. He also felt fingerprinting was unnecessary, as he knew both the occupants of the Lincoln. *State v. Wiley*, 914 So. 2d at 1119-21.

exhausted, are procedurally defaulted; and,

**IT IS FURTHER RECOMMENDED** that **CLAIM FOUR** (Ineffective Assistance of Counsel) be **DENIED AND DISMISSED WITH PREJUDICE** in accordance with Rule 4 of the Rules Governing Section 2254 Cases in the District Courts since it plainly appears that petitioner is not entitled to relief.

**THUS DONE AND SIGNED** in Chambers, Monroe,  Louisiana, this 8th day of August, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE