IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JESSIE JAMES WILEY** | * | **CIVIL ACTION NO. 07-00795** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **HARVEY GRIMMER** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court is a petition for habeas corpus, 28 U.S.C. § 2254, filed by Jessie James Wiley ("Wiley"). Docs. # 1, 36. Wiley is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the West Carroll Parish Detention Center in Epps, Louisiana. This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For reasons set forth below, it is recommended that the petition be **DENIED.**

BACKGROUND

On October 29, 2003, Wiley was found guilty of possession with intent to distribute cocaine by a 10-2 vote of the jury in Louisiana's Sixth Judicial District Court. The Second Circuit Court of Appeal of Louisiana affirmed Wiley's conviction. *State v. Wiley*, 914 So. 2d 1117 (La. Ct. App. 2005).

On May 7, 2007, after exhausting his state court remedies, Wiley filed a petition for habeas corpus in this court, raising five claims for relief. Doc. # 1. This court recommended the denial of each of Wiley's claims, and the district court adopted the recommendation. Docs. # 8,

11.

Wiley subsequently filed a motion for certificate of appealability to the United States Fifth Circuit Court of Appeal. Doc. # 13. He argued that his trial counsel, Samuel Thomas ("Thomas") was ineffective for failing to strike two jurors - Richard Townsend ("Townsend"), an employee of the Tensas Parish Sheriff's Department; and Maurice Harvey ("Harvey"), a Tensas Parish patrolman. *See Wiley v. Grimmer*, 281 Fed. Appx. 363, 363 (5th Cir. 2008).

On July 9, 2008, the Fifth Circuit granted Wiley's motion for certificate of appealability "as to his claims regarding counsel's ineffective assistance for failure to strike allegedly biased jurors" on the basis that the record before the district court did not include the necessary documents for the proper review of Wiley's ineffective assistance of counsel claim. *Id.* at 364-65. Accordingly, the Fifth Circuit vacated the district court's judgment as to the denial of Wiley's ineffective assistance of counsel claim. *Id.* at 365. Finally, the Fifth Circuit directed this court to consider the Fifth Circuit's opinion in *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) and to add to the record "any portion of the state court papers necessary for the district court to conduct a meaningful review of the issues on which COA has been granted." *Id.*

On August 4, 2008, Wiley filed a memorandum in support of his petition for habeas corpus. Doc. # 28. He argued that Thomas was ineffective for failing to strike not only Townsend and Harvey, but also Joyce Tarver ("Tarver"), an employee of Winter Quarters, a state historical site in Louisiana. While Tarver and Townsend both voted to convict, Harvey voted to acquit.

On September 9, 2008, the District Attorney's Office of Louisiana's Sixth Judicial District provided the court with the entire state court record of the proceedings in this case. Doc.

2

# 29. On December 16, 2008, this court appointed Wiley counsel from the Federal Public Defenders Office. Doc. # 33. On January 19, 2010, this court held an evidentiary hearing on Wiley's ineffective assistance of counsel claims. Doc. # 53. After briefing by the parties, the matter is now ripe.

## LAW AND ANALYSIS

**I. Standard of Review under 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA) of 1966, 28 U.S.C. § 2254, governs habeas corpus relief. The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the

correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal habeas courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Exhaustion

Wiley's claim as to Tarver and Harvey are technically unexhausted because he raised both of these claims for the first time in his state petition for discretionary review. *See Castille v. Peoples*, 489 U.S. 346 (1989).

Wiley argues, however, that the mandate rule deems these claims to be exhausted. The mandate rule provides that "a lower court on remand must implement both the letter and spirit of the [appellate court's] mandate, and may not disregard the explicit directives of that court." *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002). In light of the Fifth Circuit's directive to this court to consider Wiley's ineffective assistance of counsel claims, Wiley's argument is persuasive.

Nevertheless, this court need not consider in detail whether Wiley's claims as to Tarver and Harvey are exhausted because this court has determined, for reasons set forth in more detail below, that both of these claims are without merit. The AEDPA provides that a federal court may, in its discretion, deny habeas relief on the merits of a claim, regardless of whether the petitioner has exhausted state remedies. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State."). Accordingly, even if Wiley has failed to exhaust some of his claims, such failure would not affect the court's disposition of this matter.

**III. Ineffective Assistance of Counsel**

    **A. Standard of Review**

To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Courts must "give substantial deference to counsel's performance, 'applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment.'" *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (citation omitted). Furthermore, "[b]ecause we must make every effort 'to eliminate the distorting effects of hindsight,' a 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Id.* (citations omitted). Finally, courts consider trial counsel's decisions in jury selection - such as those at issue in this case - to be tactical decisions. *Sharp v. Johnson*, 107 F.3d 282, 287 (5th

Cir. 1997).

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94. Finally, prejudice exists only if the defendant demonstrates that he would have received less jail time. *Glover v. United States*, 531 U.S. 198, 203 (2001).

**B. Juror Joyce Tarver**

Sam Thomas, Wiley's trial counsel, challenged juror Joyce Tarver for cause. R. at V.6, p. 178. When Judge Crigler, the trial court judge, denied the challenge, Thomas did not exercise a peremptory challenge against Tarver. Wiley contends that Thomas was ineffective for failing to do so. The relevant parts of Tarver's voir dire proceedings are set forth below:

1. Judge Crigler asked the members of Tarver's panel several questions. One of these questions was whether any of the prospective jurors had friends or relatives in law enforcement. R. at 138. Because Tarver affirmatively responded to this question, Judge Crigler asked her to clarify her connection to law enforcement. *Id.* at 139. Tarver stated that a relative of hers worked in law enforcement in "another parish." *Id.* at 140. Judge Crigler then asked Tarver if she "would be so aligned with law enforcement that [she] thought it would affect [her] vote." *Id.* Tarver responded "no." Tarver then clarified that her ex-brother-in-law was a judge in Lafayette. *Id.*

2. Thomas subsequently asked Tarver a series of questions. Tarver stated that since 1997 she had worked at Winter Quarters, a state historical site in Louisiana, and that she had been

6

employed by the state for roughly fifteen years. *Id.* at 166-67. The following exchange between Thomas and Tarver then took place:

| | |
|---|---|
| Thomas: | Ms. Tarver, you don't assume the mere fact that an individual sit to the left of me at this table that he is assumed guilty, do you? |
| Tarver: | No, sir. |
| Thomas: | Okay. And the mere fact that an individual was arrested and booked, you don't feel that based on that he's assumed guilty, do you? |
| Tarver: | It's not assumed guilty. I probably would be guilty of giving more weight to a law enforcement testimony. I would probably would, but as far as whether or not, but it would still be up to the DA to prove their case. |
| Thomas: | But if you would give more weight to the ah, to law enforcement, that would mean that to you that my - that the defendant would be starting at a disadvantage, do you? |
| Tarver: | In all honesty, yes. But honestly, I would have to incline I know quite a few law enforcement officers through state park and everything. But in all honesty, I would - I believe I could be fair. But I will admit that I probably do have a bias towards being favorable to law enforcement. |
| Thomas: | Because of your employment? |
| Tarver: | Well, because I know so many law enforcement officers, that most of 'em, |
| Thomas: | You come in con- |
| Tarver: | Well most that I know are through state parks, yes, that are Louisiana's law enforcement. |
| Thomas: | You come in contact with law enforcement a lot at the park through your employment? |
| Tarver: | Well, through my employment, yes. All park managers and every park has to have a law enforcement. So I know quite a few of them. |
| Thomas: | Okay. So you - |
| Tarver: | I'm not law enforcement though. |
| Thomas: | Yeah, I understand. But you work - in other words, you don't have an officer that's assigned there with you, is that correct? |
| Tarver: | No, sir. We share the - if I need a law enforcement, I get the one from the state park. |

***

| | |
|---|---|
| Thomas: | Have you had an occasion to have to call the state parks officers or the sheriff while on duty at the Winter Quarters? |
| Tarver: | I hate to admit, but how many times, but when the alarm goes off in the middle of the night, they are automatically called. And that's happened six, seven times a year. So there's quite a few times the - and it's usually the sheriff department that comes and checks it out with me. |

***

| | |
|---|---|
| Thomas: | You usually see an officer have to work in close connection with you? |
| Tarver: | Correct. It's like five minutes. The alarm goes off. We walk through and |

7

>make sure nobody's in the museum. And - and then he leaves. So it is in a couple of minutes. *Id.* at 167-71.

3. Thomas challenged Tarver for cause on the basis of her relationship with law enforcement and her statements that she would give more credit to law enforcement testimony. *Id.* at 178. Judge Crigler denied the challenge on the following basis:

>Well, it's hard to judge when, you know, a lot of people are trying to get off. And it's hard to judge who's being sincere and who's not being sincere. She said that she's had a good relationship with law enforcement officers in the past. She's been here since '77. And her relationship that she described was the officers coming to the Winter Quarters Commemorative site and helping her to make sure it was just a false alarm rather than some burglary or some break-in at the Commemorative site. I don't recall her knowing any of the law enforcement officers that were testifying. We never see - I mean, any of the people that work for the State. I don't think in my twenty-five years I've seen one of them in the courtroom. The people that work at the state park, and she has no law enforcement people at her job. So I have to believe that her statement that she's close was not really backed up by anything other than her desire to get off the jury. So I'm gonna deny the challenge for cause on Joyce Tarver. *Id.* at 180-81.

Wiley contends that Thomas was constitutionally deficient in failing to exercise a peremptory challenge against Tarver after Judge Crigler denied his strike for cause. Wiley relies on *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006). In that case, two prospective jurors explicitly stated that they could not be impartial. The court held that these jurors' "unchallenged statements during voir dire that they could not be 'fair and impartial' obligated Virgil's counsel to use a peremptory or for-cause challenge on these jurors" and that "[n]ot doing so was deficient performance under *Strickland*." *Id.* at 610.

The state responds by contending that Thomas' decision not to exercise a peremptory challenge against Tarver was a strategic decision. The state emphasizes that in Thomas' deposition he averred that he did not exercise a peremptory challenge against Tarver because he

wanted to save the peremptory challenge for jurors who remained in the jury box who potentially had stronger biases against his client than Tarver. See Manual Ex. 1 at 27.

As an initial matter, Wiley's reliance on *Virgil* is misplaced. Unlike the attorney in *Virgil*, who did not ask follow-up questions to the jurors who said that they could not be impartial, Thomas asked Tarver a series of questions in order to clarify her bias toward law enforcement. In addition, and more importantly, the jurors in *Virgil* did not equivocate as Tarver did. Whereas the jurors in *Virgil* maintained that they could not be impartial, Tarver provided conflicting testimony on her bias toward law enforcement. She initially testified that her connection to law enforcement would not preclude her from being a fair juror. R. at V.6, p. 140. Then she testified that she would credit law enforcement testimony over that of other witnesses, only to testify later that "in all honesty" she "could be fair." *Id.* at 168. Accordingly, Thomas' failure to exercise a peremptory challenge against Tarver does not, at the very least, present so clear a case of deficient performance as the facts of *Virgil* did.

Furthermore, in light of Tarver's wavering on her bias toward law enforcement, Thomas' decision not to exercise a peremptory challenge against her after his challenge for cause had been denied was sufficiently informed so as not to defeat the strong presumption of reasonableness accorded to counsel's tactical decisions under *Strickland*. Thomas averred that he exercised a challenge for cause against Tarver because of her professed relationship with law enforcement and because he thought she was politically conservative. Manual Ex. 1 at 37. When this challenge was denied, Thomas was entitled not to use one of his twelve peremptory challenges against Tarver because, as he averred, better candidates for a peremptory challenge potentially existed in the jury box. Thomas' belief that prospective jurors with stronger biases against his

9

client than Tarver had yet to be questioned was reasonable in light of the wavering that Tarver did regarding her bias toward law enforcement. In addition, Thomas could have reasonably believed, as Judge Crigler did, that Tarver asserted that she was biased toward law enforcement simply in order to avoid serving on the jury.

Thomas' decision not to exercise a peremptory challenge against Tarver thus did not amount to deficient performance under *Strickland*. Accordingly, because Wiley cannot demonstrate that Thomas failed the first prong of *Strickland*, his ineffective assistance of counsel claim as to Tarver is unavailing.

### C. Juror Richard Townsend

Wiley also contends that Thomas was ineffective for failing to exercise either a challenge for cause or a peremptory challenge against juror Richard Townsend. Wiley essentially argues that Thomas' decision not to challenge Townsend amounted to ineffective assistance of counsel because Townsend was a jailer with the Tensas Sheriff's Department - the law enforcement body that was responsible for investigating and arresting Wiley and whose deputies provided crucial testimony against Wiley at his trial. The relevant parts of Townsend's voir dire proceedings are set forth below:

>  Townsend: My name is Richard Townsend. Married. Have one daughter, but not by my wife. My daughter is going on 14 years old. I work for Tensas Parish School Board, also Tensas Parish Sheriff's Department where I'm a jailer.
> 
> \*\*\*
> 
> The Court: And how long ago did you move to Tensas Parish?
> Townsend: Approximately twelve years ago.
> The Court: Okay. And what do you do for the school board?
> Townsend: Janitor at Davidson High School.
> The Court: All right. How long have you worked there?
> Townsend: I been there since January of this year.
> The Court: Okay. And you said you're a jailer with the Tensas Parish Sheriff's

|               |                                                                                                                                                                                   |
| ------------- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | Office?                                                                                                                                                                           |
| Townsend:     | Yes, sir.                                                                                                                                                                         |
| The Court:    | Here at the courthouse?                                                                                                                                                           |
| Townsend:     | Here at the courthouse.                                                                                                                                                           |

***

| Townsend: | I know [the prosecutor]. I know Mr. Thomas by face, that's it. I know Mr. Wiley by face. That's all. |
| The Court: | Okay. Would your knowledge of any of them affect your ability to be a fair juror? |
| Townsend: | No, it wouldn't. |

***

| Thomas:   | You been employed with the Tensas Sheriff's Department about two months? |
| Townsend: | Yes, sir. |
| Thomas:   | Okay. And you on the night - night duty? |
| Townsend: | Yes, sir. |
| Thomas:   | Okay. Have, within the two months, have you heard anything about this case? |
| Townsend: | No, sir. |
| Thomas:   | Okay. And prior to the two months had you heard anything about this case? |
| Townsend: | No more than street talk, you know. |
| Thomas:   | Street talk? |
| Townsend: | Yes, sir. |

***

| The State: | You said you work as a night jailer. Is that for the Tensas Parish Sheriff's Office? |
| Townsend:  | Yes, ma'am, here at the Sheriff's Office. |
| The State: | Okay. And knowing that and knowing that the Sheriff and two of the deputies may testify, if you believe that we have failed to meet our burden of proof, will you vote not guilty? |
| Townsend:  | Yes, ma'am. |
| The State: | Okay. And if you find that we have met our burden of proof, will you vote guilty? |
| Townsend:  | Yes, ma'am. R. at V. 6, at pp. 257-58, 274, 303-307. |

Wiley concedes that Townsend, unlike Tarver, did not reveal any overt biases during voir dire. Wiley nonetheless argues that Thomas was ineffective for failing to challenge Townsend because Townsend's employment relationship with the Tensas Parish Sheriff's Department rendered him impliedly biased.

11

Although Wiley does not bring an implied bias claim, the law governing implied bias claims serves as an important guidepost in this court's evaluation of whether Thomas was ineffective for failing to challenge Townsend. The seminal opinion on implied bias is Justice O'Connor's concurrence in *Smith v. Phillips*, 455 U.S. 209 (1982). In the concurrence, Justice O'Connor stated:

> While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Phillips*, 455 U.S. at 222 (O'Connor, J., concurring).

While none of the "extreme situations" mentioned by Justice O'Connor exactly match Townsend's circumstances, his employment relationship with the Tensas Parish Sheriff's Department certainly casts doubt on whether he could have been an impartial juror.

Nevertheless, the particular facts of the case indicate that Thomas's decision to overlook Townsend's employment relationship with the Tensas Parish Sheriff's Department was sufficiently informed so as not to defeat the strong presumption of reasonableness accorded to counsel's tactical decisions under *Strickland*. At his deposition, Thomas averred that he did not challenge Townsend for at least two reasons. First, Thomas emphasized that Townsend was black, as was the defendant. Manual Ex. 1 at 19. Thomas averred that his nearly thirty five years of law practice in Louisiana's Sixth Judicial District taught him that black people in the district are generally much less likely to vote for a conviction than white people are.[1] *Id.* Second,

---

[1] The Constitution does not preclude attorneys from taking into account the racial considerations that Thomas did when he was determining whether to select Townsend as a juror. *See Government of the Virgin Islands v. Weatherwax*, 77 F.3d 1425 (3rd Cir. 1996) ("The

12

Thomas pointed out that Townsend had a young child. *Id.* at 22. Thomas stated that he believed that this fact would make Townsend doubt the credibility of James Arnold-- one of the state's key witnesses-- a school teacher who testified that he had used drugs. In light of these specific reasons articulated by Thomas, as well as Townsend's testimony that he could be impartial, Thomas' decision to retain Townsend as a juror was not unreasonable.

Accordingly, as with Thomas' decision not to exercise a peremptory challenge against Tarver, Thomas' decision not to challenge Townsend did not amount to deficient performance. Wiley's ineffective assistance of counsel claim as to Townsend is therefore also unavailing.

### D. Maurice Harvey

Wiley also contends that Thomas was ineffective for failing to challenge juror Maurice Harvey, a Tensas Parish patrolman. However, Harvey was one of the two jurors who voted to acquit Wiley. Accordingly, Wiley cannot demonstrate that Thomas' decision not to challenge Harvey prejudiced him for purposes of *Strickland*.

### E. Petitioner's Affidavit

In an affidavit that Wiley submitted to this court, he averred that he received a note from a "Bobby James" while voir dire was ongoing in his case. Doc. # 28 at 10. The note allegedly read, "If you don't get [Townsend and Harvey] off of your jury . . . the race has already started and it's already 2-0." *Id.* Wiley further averred that he handed the note to Thomas, although Thomas disregarded it. *Id.*

---

Supreme Court has never concluded . . . that aversions and affinities arising from the attitudes and experiences of different racial groups do not exist or that they do not affect jury verdicts . . . . Nor has the Supreme Court ever held that ineffective assistance of counsel occurs whenever an attorney exercises his or her professional judgment based on the belief that such aversions and affinities may influence a jury's verdict.").

13

At the evidentiary hearing in this matter, Wiley also contended that he told Thomas that he did not want Townsend, Harvey, or Tarver to serve on the jury. Doc. # 54 at 5-6.

As previously noted, an attorney's decisions during jury selection are tactical decisions that are given a strong presumption of reasonableness. *Sharp v. Johnson*, 107 F.3d at 287. In light of this court's foregoing conclusions that Thomas exercised reasonable professional judgment in deciding not to challenge Townsend, Harvey, or Tarver, Wiley's contention that Thomas disregarded his admonitions as to each of these jurors is unavailing.

Furthermore, except for Wiley's own self-serving statements, the record simply does not support a claim that Wiley received such a note or that at any point during voir dire or during his trial objected to the participation of Townsend, Harvey, or Tarver as jurors. On the contrary, given the undisputable fact that Harvey actually voted to acquit Wiley, his allegation that he received a note warning him that Harvey and Townsend would vote to convict is highly suspect. Of course, even if Thomas decided to retain these jurors after Wiley told him he didn't want them to serve, Wiley has not carried his burden of proof to show that Thomas's decision in this regard constituted ineffective assistance of counsel. *See Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992) (stating that the defendant must overcome a "preponderance of the evidence" burden of proof as to both prongs of *Strickland*).

.

## CONCLUSION

For the reasons stated above, it is recommended that the petitioner's petition for writ of habeas corpus (docs. #1, 36) under 28 U.S.C. § 2254 be **DENIED and DISMISSED with prejudice**. Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties

have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of July, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE